IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANTANDER CONSUMER USA, INC. § | | |
| f/k/a DRIVE FINANCIAL SERVICES, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. 3:13-CV-154-N |
| § | | |
| ANCHOR MOTOR CO., INC., § | | |
| § | | |
| Defendant. § | | |

# **ORDER**

This Order addresses Defendant Anchor Motor Co., Inc.'s ("Anchor") motion to dismiss or, in the alternative, to transfer venue [Doc. 4]. Because the Court lacks personal jurisdiction over Anchor, the Court grants the motion and dismisses this case.

### I. THE PARTIES' CONTRACT DISPUTE
### AND ANCHOR'S MOTION TO DISMISS

Plaintiff Santander Consumer USA, Inc. f/k/a Drive Financial Services ("Santander") is a corporation organized under Illinois law. Its principal place of business is in Dallas, Texas. Santander purchases automobile retail installment sales contracts from car dealerships. Anchor is a car dealership organized under Iowa law that operates its principal place of business in Clarke County, Iowa. It has no Texas office or operations. None of its employees, representatives, or agents work in Texas, are assigned to Texas, or have visited Texas for business purposes. Anchor is not registered to conduct business in Texas and does not promote, market, or sell cars in the state.

ORDER – PAGE 1

Santander and Anchor signed a Non-Recourse Dealer Retail Agreement (the "Agreement") in April 2008. The Agreement does not require further performance from either side. Rather, it provides a framework under which Anchor could, at its option, submit retail installment contracts to Santander for possible purchase. Santander, at its discretion, could then decide whether to purchase them. Before Santander bought a contract, the Agreement required Anchor to give Santander certain information, including the state of the automobile that was the subject of the retail installment contract.

More than three years after signing the Agreement, Anchor began selling and assigning contracts to Santander. Santander purchased a total of eighty-nine contracts from Anchor between June 2011 and July 2012. According to Santander, Anchor violated the terms of the Agreement by misrepresenting to Santander the state of the automobiles at issue in ten of those contracts (the "Subject Contracts"). Anchor sold the Subject Contracts to Santander between January and May 2012.

Santander filed this action in Texas state court. It accuses Anchor of breach of contract due to Anchor's alleged misrepresentations regarding the Subject Contracts. Anchor removed the case to this Court on diversity grounds and now seeks to dismiss it under Federal Rule of Civil Procedure 12(b)(2).

## II. STANDARD OF REVIEW FOR MOTIONS TO DISMISS UNDER RULE 12(B)(2)

A nonresident defendant is subject to the jurisdiction of a federal court sitting in diversity if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) exercise of personal jurisdiction by the forum state is consistent with due

process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). The Texas long-arm statute confers jurisdiction to the limits of the Constitution. *See id.*; *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984). The Court, therefore, need concern itself only with the federal due process inquiry. *See Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992) (citations omitted).

The Due Process Clause of the Fourteenth Amendment limits the reach of a state court's – and thus a federal court's – jurisdiction over a nonresident defendant. *See Shaffer v. Heitner*, 433 U.S. 186, 207 (1977). Specifically, due process requires that two elements be satisfied. First, the nonresident must have purposefully established "minimum contacts" in the forum state such that he should reasonably anticipate being haled into court in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S. Ct. 559, 566, 62 L. Ed. 2d 490 (1980)). Second, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 us at 320). The minimum contacts analysis required by due process ensures that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472.

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists if (1) the cause of action is related

to, or arises from, the defendant's contacts with the forum, and (2) those contacts meet the due process standard. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). General jurisdiction, on the other hand, exists where the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. 408, 415 (1984) (citations omitted). Under either a general or specific jurisdiction analysis, however, "[t]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (quoting *Burger King*, 471 U.S. at 474).

Minimum contacts are not enough by themselves to establish jurisdiction. Rather, a defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe*, 326 U.S. at 319). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Stuart*, 772 F. 2d at 1191 (quoting *Burger King*, 471 U.S. at 475).

A court must consider the totality of the circumstances of a case when making the purposeful availment inquiry, as "no single factor, particularly the number of contacts, is determinative." *Id.* at 1192. "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the

activity with relation to the forum state." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

Santander, as the party seeking to invoke the Court's power, bears the burden of establishing the Court's jurisdiction over Anchor. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (citing cases). If a district court, as here, decides a motion to dismiss without holding an evidentiary hearing, a prima facie case suffices to establish jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). A court must take uncontroverted allegations in the complaint as true, and it must resolve all factual conflicts favor of the plaintiff. *Pervasive Software*, 688 F.3d 214 at 220 (citing *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). In deciding the motion, a court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (citing *Thompson*, 755 F.2d at 1165).

### III. THE COURT LACKS PERSONAL JURISDICTION OVER ANCHOR

This is not the first time that Santander, under similar circumstances to those in this case, has asserted that a court has personal jurisdiction over a nonresident car dealership. Two courts in this District have considered the question, but they reached opposite conclusions.[1] The first court found that it had jurisdiction. *Santander Consumer USA, Inc.*

---

[1]Santander has also attached five orders from Texas state district courts effectively finding personal jurisdiction in similar cases. *See* Pl.'s App. Supp. Resp. Mot. Dismiss [12-

*v. Car Smart, Inc.*, No. 3:09-CV-2317-G, 2010 WL 3703848 (N.D. Tex. Sept. 20, 2010). The second determined that it did not. *Santander Consumer USA, Inc. v. Shults Ford, Inc.*, No. 3:11-CV-614-L, 2011 WL 2601520 (N.D. Tex. June 30, 2011). Though neither case binds this Court, *Shults* is the more persuasive of the two given the facts of this case.

### A. The Court Lacks Specific Jurisdiction

To show that a court has specific jurisdiction, a plaintiff must show that (1) there are sufficient (i.e., not random, fortuitous, or attenuated) prelitigation connections between the nonresident defendant and the forum; (2) the defendant purposefully established the connections; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts. *Pervasive Software*, 688 F.3d at 221 (citing 1 ROBERT C. CASAD & WILLIAM B. RICHMAN, JURISDICTION IN CIVIL ACTIONS §§ 2–5, at 144 (3d ed. 1998)). A defendant can defeat specific jurisdiction even in the face of such a showing if he or she can establish in response that the balance of interest factors demonstrate that specific jurisdiction would be unreasonable. *Id.* Here, Santander has not shown prelitigation connections between Anchor and the State of Texas sufficient to subject Anchor to the Court's specific jurisdiction.

As a general matter, Anchor notes that it has no contacts with the state beyond its connections with Santander related to the Agreement. Even so, Santander points to several alleged contacts with Texas that, it maintains, show a sufficient connection to give rise to

---

1] 23–27. These orders, however, consist of perfunctory language overruling the defendants' challenges to jurisdiction. As they do not explain the courts' reasoning, the Court is not persuaded by these orders.

specific jurisdiction. A number of these alleged contacts are duplicative.[2] Still others are Santander's unilateral actions.[3] These alleged contacts do not affect the Court's analysis. The remaining contacts effectively amount to Anchor's entry into the Agreement and the parties' subsequent actions pursuant to the Agreement. Specifically, Santander notes the following: (1) Anchor entered into the Agreement, (2) the Agreement has a Texas choice of law clause, and (3) Anchor delivered the Subject Contracts to Santander's Dallas office. As the Court explains below, however, these contacts, whether considered individually or in sum, are insufficient to subject Anchor to the Court's specific jurisdiction.

---

[2]Santander highlights (1) Anchor's sale of eighty-nine contracts, (2) Anchor's selection of Santander as the assignee of those contracts, (3) Anchor's election to sell the contracts under the Agreement, and (4) Anchor's indemnification of Santander for claims arising from Anchor's conduct under the Agreement. The Court considers the first three of these to be coextensive with Anchor's actions pursuant to the Agreement, which the Court addresses below. The fourth is not a contact that is separate from the Agreement itself. *See Shults*, 2011 WL 2601520, at *5 (noting that indemnity agreement was not "part of an enduring or substantial business relationship between the parties, such that Defendant had purposefully availed itself of the privilege of conducting business with Texas").

[3]Santander notes that (1) the Agreement was prepared, negotiated, and executed in part in Texas; (2) the "Agreement was performed in significant part in" Texas; (3) Santander accepted the Subject Contracts in Dallas; and (4) Santander paid for the Subject Contracts from Texas. The Court first notes that the first two "contacts" must refer to Santander's actions in preparing, executing and acting under the Agreement, because no Anchor employee visited Texas. Aff. of Walter Reisinger, Jr. [6] ¶ 9. "[A] plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007). For the reasons the Court discusses below, the Agreement, like the parties' relationship, is centered on Iowa. *See infra* section III.A.2. The Court therefore gives no weight to these alleged contacts.

ORDER – PAGE 7

***1. None of Anchor's Contacts, by Themselves, Establish Jurisdiction.*** – First, the Agreement itself is insufficient. The Supreme Court and the Fifth Circuit have long held that a nonresident defendant's contract with a resident plaintiff does not establish minimum contacts. *E.g.*, *Burger King*, 471 U.S. at 478; *Moncrief Oil*, 481 F.3d at 311. Moreover, communicating about, developing, and carrying out a contract do not "constitute the required purposeful availment of the benefits and protections of Texas law." *Moncrief Oil*, 481 F.3d at 311 (citing *Holt Oil*, 801 F.2d at 778). Moreover, a choice of law clause is relevant to a personal jurisdiction analysis, but it is not determinative. *See Burger King*, 471 U.S. at 482; *Electrosource, Inc. v. Horizon Battery Techs, Ltd.*, 176 F.3d 867, 873 (5th Cir. 1999) ("[A] choice-of-law provision should neither be ignored nor considered sufficient alone to confer jurisdiction."). Thus, the Agreement, even in light of its choice of law clause, is insufficient by itself to demonstrate minimum contacts.

Santander also maintains that Anchor's sending of the Subject Contracts to Dallas constitutes sufficient contacts.[4] The Court first notes that there is a factual dispute on this point. Santander has submitted an affidavit from an employee claiming that Anchor sent the Subject Contracts to Dallas. Aff. of Brandon Dry [12-1] ¶ 6. On the other hand, Anchor's manager, Walter Reisinger, stated that Anchor sent the Subject Contracts only to Santander

---

[4]The Court considers only the Subject Contracts in this discussion because they are the contacts out of which Santander's cause of action arises. The Fifth Circuit has previously found a cause of action to arise out of a contact when the contact is a "but for" cause of the cause of action. *See Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n.21 (5th Cir. 1981). Because the contracts other than the Subject Contracts are not "but for" causes of Santander's cause of action, they do not affect the Court's specific jurisdiction minimum contacts analysis.

offices outside of Texas. Decl. of Walter Reisinger, Jr. Supp. Def.'s Reply Br. [14] [hereinafter Reisinger Reply Decl.] ¶ 5. Anchor has also included files and UPS receipts corroborating its account. *Id.*, unlabeled attach. Anchor's evidence, though, does not dissolve the rule that the Court must resolve all fact questions in favor of Santander. *See Thompson*, 755 F.2d at 1165. The Court therefore assumes that Anchor sent the contracts to Texas. Even so, however, "[t]he number of contacts with the forum state is not, by itself, determinative." *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983). The Court concludes that Anchor's mailing of the Subject Contracts to Santander in Dallas does not in and of itself constitute sufficient minimum contacts. *See id.* at 1029 (affirming dismissal for lack of jurisdiction and declining to "weigh heavily the fact that Alaska Mechanical may have mailed payment checks into the forum state in exchange for [certain] goods."). In short, the relevant contacts do not, taken individually, amount to minimum contacts sufficient to support the exercise of specific jurisdiction over Anchor.

   *2.   Even Collectively, Anchor's Contacts Are Insufficient to Trigger Jurisdiction.* – Santander argues, largely based on the Supreme Court's decision in *Burger King v. Rudzewicz*, that the parties had an ongoing and substantial relationship that justifies specific jurisdiction. The Court disagrees. "In a breach of contract case, to determine whether a party purposefully availed itself of a forum, a court must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.

1999) (quoting *Burger King*, 471 U.S. at 479). Analysis of these factors demonstrates that Anchor's Texas contacts are insufficient to warrant specific jurisdiction.

First, the parties apparently never negotiated or did any business with one another prior to their conversations about the Agreement. And even these negotiations were not extensive: according to Reisinger, "Anchor did not negotiate the terms of the Agreement with Santander." Reisinger Reply Decl. ¶ 2. Moreover, no Anchor employee traveled to Texas in connection with the Agreement. Reisinger Aff. ¶ 9. Therefore, the parties' prior negotiations offer little if any support for the conclusion that Anchor purposefully established minimum jurisdictional contacts with Texas.

Second, the Agreement itself does not envision any fixed future consequences. The Agreement merely provides a framework under which the parties could later choose to interact with each other regarding consumer contracts. It does not set a definite term for the relationship or require either party to perform. This situation distinguishes this case from *Burger King*, in which the parties – Florida-based franchisor Burger King and Michigan-based franchisee John Rudzewicz – had a twenty-year franchise agreement that spelled out the parties' rights and obligations. 471 U.S. at 464–65. For instance, the *Burger King* franchisees "commit[ed] themselves to payment of monthly royalties, advertising and sales promotion fees, and rent." *Id.* at 465. Anchor committed itself to no such requirements under the Agreement, which includes no ongoing obligations. Rather, the Agreement specifies that Anchor could submit contracts to Santander at Anchor's option, and that Santander could accept them at Santander's option. Anchor could have chosen, without any

consequence, to submit no contracts at all. In fact, it submitted none for over three years after entering into the Agreement. The Agreement itself, then, does not specify any term of dealings and does not contemplate any future consequences like the royalties and rent payments the *Burger King* contract anticipated. Rather, any future consequences under the Agreement were wholly contingent upon Anchor's decision to submit contracts to Santander. The Agreement's silence as to future consequences, like the parties' prior negotiations, suggests that Anchor did not establish minimum contacts with Texas.

Third, the terms of the Agreement do not demonstrate a strong link to Texas. While the Texas choice of law clause suggests a connection, nothing else does so. In fact, the Agreement's terms suggest that the center of the parties' relationship is Iowa, not Texas: Anchor performed its actions there, and the cars at issue in the consumer contracts were purchased there. *Accord Shults*, 2011 WL 2601520, at *4 (finding that dealership's home state "is clearly the center of the parties' activities").

Finally, the course of the parties' dealings was reasonably limited. It is true that, in sum, Anchor sold Santander eighty-nine contracts under the Agreement between June 2011 and July 2012. The parties, however, have not engaged in further negotiations, and, according to Reisinger, Anchor ceased doing business with Santander in or shortly after July 2012. Reisinger Reply Decl. ¶ 2. The limited scope of the parties' dealings differentiates this case from *Burger King*, in which the parties' relationship was more lasting and significant. For instance, Burger King imposed "standards and rigid regulation" from Florida on its franchisees nationwide. 471 U.S. at 465. Burger King also "work[ed] directly with

ORDER – PAGE 11

its franchisees to resolve major problems," even if, the franchisees, like Rudcewicz, lived in different states. *Id.* at 466. The franchise agreement, moreover, "envisioned continuing and wide-reaching contacts" between the parties. *Id.* at 479–80. These facts evince a course of dealing in which Burger King and Rudzewicz had "a substantial and continuing relationship." *Id.* at 487. No such facts appear in this case, in which Anchor and Santander interacted only in connection with the Agreement and the contracts sold pursuant to it. The parties' relationship was therefore neither as substantial nor as continuing as the relationship in *Burger King*.

Taking all of these factors together and considering the parties' interactions as a whole, the Court concludes that Anchor has not purposefully established the necessary minimum contacts with Texas that would subject it to this Court's specific jurisdiction. Anchor's relationship with Texas is based solely on its interactions with Santander under the Agreement. Those interactions, in turn, rest on "the mere fortuity that [Santander] happens to be a resident of the forum." *Holt Oil*, 801 F. 2d at 778 (quoting *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985)). The Court, therefore, lacks specific jurisdiction over Anchor.

### B. The Court Lacks General Jurisdiction

A court has general jurisdiction over a nonresident defending only if the defendant's contacts with the forum state are continuous and systematic. *Helicopteros Nacionales*, 466 U.S. at 415. The sort of contacts that give rise to general jurisdiction are "of a more extensive quality and nature" than those supporting specific jurisdiction. *Choice Healthcare,*

*Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010). The defendant's contacts must be substantial, not "random, fortuitous, or attenuated." *Id.* "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)).

Santander has not contested Anchor's argument that the Court lacks general jurisdiction over Anchor. Because it has not even alleged that Anchor has systematic and continuous contacts with Texas, Santander has not carried its burden of establishing general jurisdiction. Moreover, Anchor's contacts with Texas – essentially signing the Agreement with and sending eighty-nine contracts over the course of a year to Santander – are not continuous or systematic enough to support the exercise of general jurisdiction. *Accord Shults*, 2011 WL 2601520, at *3; *see also Choice Healthcare* (finding no general jurisdiction where defendant remitted fifty-three payments to plaintiff over three years); *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (same where defendant routinely arranged and received shipments to and from forum state and regularly sent employees to forum state for various reasons). The Court accordingly concludes that it lacks general jurisdiction over Anchor.[5]

---

[5]Because Anchor lacks minimum contacts sufficient to trigger either specific or general jurisdiction, the Court need not consider whether personal jurisdiction would offend traditional notions of fair play and substantial justice.

## CONCLUSION

Because the Court lacks both specific and general jurisdiction over Anchor, the Court grants Anchor's motion and dismisses this case without prejudice to refiling in another district.

Signed April 30, 2013.

_____
David C. Godbey
United States District Judge